Henry ESPINAL, Plaintiff,

v.

Glenn S. GOORD, Commissioner, Donald Selsky, Director of Special Housing Unit, Christopher Artuz, Superintendent for Security Services, George Schneider, Deputy Superintendent for Security Services, Lt. Quackenbush, Review Officer, Lt. Haubert, Review Officer, A. Pelc, Hearing Officer, Sgt. B. Schaller, D. Carey, Correctional Officer, C. Centanni, Correctional Officer, Sgt. R. Shanley, jointly, severally and individually, respectively, Defendants.

No. 01 CIV.6569 NRB.

United States District Court, S.D. New York.

Jan. 17, 2002.

---

Henry Espinal, Malone, NY, Plaintiff, pro se.

Elliot Spitzer, Attorney General for the State of New York by Anthony Gould, Assistant Attorney General, New York City, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Henry Espinal, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") brings this § 1983 action against various prison officials asserting violations of his rights under the Eighth and Fourteenth Amendments. Espinal moves for a temporary restraining order or preliminary injunction that would require the defendants to release him from punitive segregation in the Special Housing Unit ("SHU") place him in the general prison population, with restoration of all rights and privileges, and expunge the disciplinary convictions that led to his punitive segregation. He also moves for the appointment of counsel. For the reasons that follow, both motions are denied.

---

1.  The facts elucidated herein are those presented by Espinal in his complaint, amended complaint, and moving papers. The defendants have not challenged Espinal's version of events.

2.  Prison Rule 113.10.

## BACKGROUND [1]

Espinal was convicted of murder and attempted assault, and sentenced to an indeterminate sentence of twenty-six years, six months to life, beginning on June 19, 1996. On June 30, 1998, a fight broke out in the yard area of the Green Haven Correctional Facility, where Espinal was then incarcerated. On July 2, 1998, Espinal was served with an Inmate Misbehavior Report ("IMR"), alleging that two prison officials saw Espinal "drop a weapon and run off into the crowd" during the fight. IMR dated June 30, 1998. Espinal was charged with violating a prison rule that prohibits the possession of weapons by prisoners.[2]

On July 6, 1998, a "Tier III" disciplinary hearing [3] was held before defendant George Schneider. Espinal pleaded not guilty, and testified that, while he was present in the area, he did not possess a weapon. On the testimony of the prison official witnesses, however, he was found guilty. Schneider imposed a penalty of twelve months confinement to SHU and a concurrent loss of privileges. Espinal filed an administrative appeal, but the decision was affirmed. He then instituted an Article 78 proceeding, which was dismissed.

On July 7, 1998, Espinal was served with a second IMR also stemming from the June 30, 1998 incident. This IMR, authored by defendant D. Carey, alleged that Espinal assaulted and cut a fellow inmate, in violation of prison rules.[4] The IMR

---

3.  "Tier III hearings are held for the most serious violations of institutional rules." *Colon v. Howard*, 215 F.3d 227 (2d Cir.2000) (quotation and citation omitted).

4.  Specifically, Espinal was accused of violating Prison Rules 104.11 (violent conduct), 100.10 (assault on inmate), and 100.13 (fighting).

stated that Espinal had been identified as the perpetrator "through numerous interviews and confidential informants." IMR dated July 7, 1998. Defendant A. Pelc presided over a Tier III hearing on July 9, 1998 where Espinal pleaded not guilty. He again testified that he was in the area, but denied that he assaulted the victim. Fellow inmate L. Rivera (who was accused of assisting in the assault) testified and corroborated Espinal's story. Correction Officers Lopez and Bovair as well as defendants D. Carey and B. Schaller also testified.

Espinal requested that Pelc provide him with any part of the confidential information, and that he interview the confidential informants referred to in the IMR. Both requests were denied. On the basis of the documents provided by the correction officers as and the witness testimony, Pelc found Espinal guilty of the three charges and imposed a penalty of thirty six months confinement to SHU, loss of various privileges, and recommended a loss of good time credits. The confinement was to served consecutively with the twelve months already imposed. Espinal filed an administrative appeal, but the determination was affirmed. He then instituted an Article 78 proceeding, which was dismissed on February 15, 2000 on procedural grounds.

Several months later, Espinal was being escorted from his cell in SHU for a visit by defendants Shanley and Centanni. An incident occurred while they were in the elevator. According to Espinal, who had his hands behind his back in handcuffs, Centanni violently assaulted him without provocation, and Shanley did nothing to stop the attack. According to the subsequent IMR drafted by Centanni, on the other hand, what happened was that "Espinal raised his right foot into the corner wall area, pushing us both back and then dead butted me with the back of his head, hitting me in my upper right lip." IMR dated Sept. 16, 1998. Centanni asserts that any physical contact with Espinal was solely an attempt to restrain him. *Id.* As these events took place in the elevator, they were apparently captured on video tape.

On September 17, 1998, Espinal was served with a third IMR, which alleged two violations of prison rules.[5] A third Tier III hearing was held before Schneider on September 29, 1998. Espinal again pleaded not guilty and testified to his version of events. He requested that Schneider view the video tape of the events, which request was apparently granted. Based on the IMR, the video tape, and the testimony of Espinal, Centanni, Shanley and Correction Officer Tonasso, Schneider found Espinal guilty and imposed a penalty of an additional twelve months confinement in SHU to be served consecutively with the other two penalties. Espinal filed an administrative appeal, but the determination was affirmed.

As a result of the three Tier III hearings, Espinal has been held in SHU since June 30, 1998, and is scheduled to be released back to the general prison population on June 30, 2003. He has already spent about three and a half years in SHU, and has about one and a half years remaining in his term of confinement. Part of that time has been spent in the SHU at Green Haven, Upstate, and Great Meadow Correctional Facilities, but Espinal is presently housed in the SHU at Southport Correctional Facility.[6]

---

**5.** Prison Rules 100.11 (assault on staff) and 107.10 (interference with employee).

**6.** In his Affidavit, Espinal states that he was confined in the Green Haven Correctional Facility SHU from June 30, 1998 to October

## ANALYSIS

### A. Showing Required for a Preliminary Injunction

█ In the usual case, a party seeking a preliminary injunction

> must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) (citations and quotation marks omitted). In certain circumstances, however, the movant is held to a more exacting standard. Thus, where a party "challenges government action taken in the public interest pursuant to a statutory or regulatory scheme, ... the moving party cannot resort to the 'fair ground for litigation' standard, but is required to demonstrate irreparable harm and a likelihood of success on the merits." *Id.* (citations and some quotation marks omitted). Moreover, "where (1) the injunction sought will alter, rather than maintain, the status quo ... or (2) the injunction sought will provide the movant with substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits," the moving party must make a "clear or substantial showing of likelihood of success on the merits." *Id.* (citation and quotation marks omitted).

In the case at bar, it is clear that Espinal is challenging "government action tak-en in the public interest pursuant to a statutory or regulatory scheme" by petitioning this Court to release him to the general prison population. *Id.* The prison authorities and public have an interest in keeping prisons safe and secure, and Espinal was confined to SHU on the basis of a hearing held pursuant to a New York regulatory scheme intended to advance that interest. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 254 (Tier III hearing procedure). Furthermore, it is also clear that issuing the requested injunction would "alter, rather than maintain, the status quo" in that it would release Espinal from SHU confinement-where he has spent the last three and a half years and is expected to spend another one and a half years-to the general prison population. *Jolly*, 76 F.3d at 473. As in *Jolly*, "[a]n order mandating his release would require a dramatic shift in an established DOCS policy," and therefore, "the status quo should not lightly be overturned." *Id.* at 474.

Hence, for the requested injunction to issue, Espinal must demonstrate that he will suffer irreparable harm in the absence of the injunction, as well as make a clear or substantial showing of likelihood of success on the merits.

### B. Substantial Likelihood of Success on the Merits [7]

#### 1. Threshold *Sandin* Showing

█ In order to succeed on his claims that he was denied due process in the three Tier III hearings, Espinal must first

---

3, 1999, in the Upstate Correctional Facility SHU from October 4, 1998 to January of 1999, in the Great Meadow SHU from January of 1999 to March 9, 2001, and returned to the Upstate SHU on March 9, 2001. Espinal Aff. ¶ 57. A recent letter from Espinal to the Court included a return address and postmark from Southport Correctional Facility.

Letter dated December 2001. Therefore, we assume that he is presently housed in the Southport SHU.

**7.** As the preliminary injunction Espinal seeks is only relevant to his Fourteenth Amendment claim, we do not consider the merits of his Eighth Amendment claim here.

make a "threshold showing" that he was entitled to the procedural due process protections of the Fourteenth Amendment. *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000). This threshold showing Espinal must make is that his SHU confinement subjected him to "atypical and significant hardship [ ] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Upon consideration of the record before the court, as well as the applicable Second Circuit precedents, it is abundantly clear that Espinal has succeeded in making the required showing.[8]

As of this date, Espinal has already spent nearly 1,300 days in SHU confinement. The "longest confinement in normal SHU conditions that [the Second Circuit has] ruled was not shown to meet the *Sandin* standard was 101 days." *Colon*, 215 F.3d at 231. Furthermore, "wherever the durational line is ultimately drawn, 305 days [in normal SHU conditions] satisfies the [*Sandin* ] standard."[9] *Id.* On this record,[10] we are convinced that Espinal has made the requisite showing under *Sandin.* He was entitled to procedural due process at the three Tier III hearings.

## 2. Due Process

■ While the "due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecutions," there are certain minimum rights that a prisoner must be afforded under the Fourteenth Amendment. *Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *see Wolff v. McDonnell*, 418 U.S. 539, 563–69, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (outlining the due process rights retained by prisoners). Specifically, with respect to a disciplinary hearing such as the Tier III hearings at issue here, the

8. Much ink has been spilled in this Circuit discussing whether and when SHU confinement meets the atypicality standard. *See, e.g., Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001); *Sims*, 230 F.3d at 22–24; *Colon*, 215 F.3d at 230–34; *Kalwasinski v. Morse*, 201 F.3d 103, 106–108 (2d Cir.1999); *Welch v. Bartlett*, 196 F.3d 389, 393–95 (2d Cir.1999); *Scott v. Albury*, 156 F.3d 283, 286–88 (2d Cir.1998); *Wright v. Coughlin*, 132 F.3d 133, 136–37 (2d Cir.1998); *Frazier v. Coughlin*, 81 F.3d 313, 317–18 (2d Cir.1996). The Second Circuit has rejected a "bright-line rule that confinement in normal SHU conditions of more than 180 days meets the *Sandin* standard," *Colon*, 215 F.3d at 232, in favor of a "fact-intensive inquiry" into the duration and nature of a given SHU confinement. *Sims*, 230 F.3d at 22. Nevertheless, under any reading of *Sandin*, it is obvious that Espinal's SHU confinement qualifies as an "atypical and significant hardship [ ] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293.

9. Moreover, the conditions of Espinal's confinement are substantially identical to those discussed in *Colon*, and stand in stark contrast to the conditions of prisoners in the general population. 215 F.3d at 230. Com-

pare Espinal Aff. ¶¶ 57–85 (describing the conditions he experiences in SHU, including the fact that he is confined to his cell twenty three hours a day, his property privileges are severely restricted, and he is permitted only two or three showers per week) *with id.* ¶¶ 5–56 (describing the conditions of the general prison population). Finally, we observe that Espinal is currently housed in the SHU-only Southport Correctional Facility, "where SHU conditions are harsher than in SHU facilities of other New York prisons." *Colon*, 215 F.3d at 234 n. 7; *see Lee v. Coughlin*, 26 F.Supp.2d 615, 624–33 (S.D.N.Y.1998) (describing conditions at Southport).

10. The Second Circuit has instructed the district courts to "develop a detailed factual record" of the conditions of a given SHU confinement when the confinement duration is "within the 101–305 day range." *Sims*, 230 F.3d at 24. As the duration in the instant case is more than three times as long as the outside of that range, we do not feel that a more detailed factual record is necessary to determine whether Espinal's confinement satisfies the *Sandin* test.

Fourteenth Amendment requires that (1) the inmate receive at least twenty four hours written notice of the disciplinary charges against him; (2) the inmate be permitted to call witnesses and present evidence "when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals," *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963; (3) the inmate be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) the inmate be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken. *See Wolff v. McDonnell,* 418 U.S. at 563–69, 94 S.Ct. 2963; *Kalwasinski,* 201 F.3d at 108 (2d Cir.1999); *McCann v. Coughlin,* 698 F.2d 112, 121–22 (2d Cir.1983). Each will be discussed seriatim.

### a. Notice

As discussed above, Espinal was served with a written IMR before each of the three Tier III hearings at issue. Each IMR included a statement of the prison rules he had allegedly violated as well as a factual description of the relevant incident. The first IMR was served on Espinal on July 2, 1998 notifying him of a hearing which was held on July 6, 1998, the second IMR was served on Espinal on July 7, 1998 notifying him of a hearing which was held on July 9, 1998, and the third IMR was served on Espinal on September 17, 1998 notifying him of a hearing which was held on September 29, 1998. Thus, in each case, he was given more than the required twenty four hours notice.

■ Espinal claims, however, that the second IMR did not provide him with adequate notice of the charges against him. Pl.'s Mem. at 16–17. He asserts that, due to a fundamental difference between fighting (mutual violence) and assault (unilater-

al violence), he should not have been charged with both, as the facts indicated that he was accused of assault. *Id.* at 16. This argument is meritless. It was reasonable of the officers who prepared the report to give notice of both charges, as further factfinding may have been necessary to determine whether the inmate who was assaulted by Espinal fought back against his assailant.

■ Espinal also claims that the notice was defective because the IMR failed to indicate the basis of knowledge or veracity of the confidential informants from whom the information was obtained. *Id.* at 17. This argument, too, is meritless because such information was not necessary to apprize Espinal of the nature of the charges against him. Accordingly, Espinal was provided with constitutionally sufficient notice.

### b. Presentation of Evidence by Prisoner

Nowhere in his thirty two page memorandum in support of the instant motion does Espinal claim that he was prevented from submitting evidence or calling witnesses during the three Tier III hearings. Rather, he testified on his own behalf, called an inmate witness to testify, and persuaded the presiding officer to view a video tape of the events that were the subject of the third Tier III hearing. Accordingly, this aspect of due process was satisfied in the present case.

### c. Fair and Impartial Hearing Officer

Espinal claims that defendant Schneider, the hearing officer who presided over his first and third Tier III hearings, was biased against him, thereby depriving him of his right to a "fair and impartial hearing officer." *Kalwasinski,* 201 F.3d at 108; *see* Pl.'s Mem. at 12–15, 25–27. Specifical-

ly, Espinal argues that Schneider was insufficiently impartial because he "is the supervisor of the security staff who responded to the incident" at issue in the first Tier III hearing. Am. Compl. ¶ 18. He also claims that, during that hearing, Schneider "assumed the role of a quasi-prosecutor" by asking leading and suggestive questions to the officers and "ambiguous, misleading questions" to Espinal and his witnesses "in an effort to solicit inconsistent, contradictory testimonies from them thereby hindering any chance of a successful defense from the petitioner." Pl.'s Mem. at 13. Finally, Espinal claims that Schneider was also biased against him when he presided over the third Tier III hearing because he "was under obvious pressure to resolve the disciplinary dispute in favor of the officers under his command." *Id.* at 27.

■ It is well settled that "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989). Rather, due process requires only that the hearing officer not be "a hazard of arbitrary decisionmaking." *Wolff,* 418 U.S. at 571, 94 S.Ct. 2963.

Moreover, while the Second Circuit has hinted that a prison official who directly "participated in the investigation of acts complained of or who has been a witness to such acts" may be insufficiently impartial to preside over a prison disciplinary hearing, *Powell v. Ward,* 542 F.2d 101, 102–03 (2d Cir.1976), the mere fact that "a decision-maker has responsibilities to uphold standards of conduct does not inevitably mean that he is disqualified from adjudicating allegations that those standards have been breached." *Id.* at 103; *see also*

*Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996) ("the independent hearing officer need not come from outside the prison").

■ In the case at bar, Espinal argues that Schneider was "directly involved in and investigated the incident," thus disqualifying him under *Powell v. Ward.* Pl.'s Mem. at 13. This legal conclusion, however, is not supported by the undisputed facts. According to Espinal, Schneider was merely "notified of the incident [in question], is the supervisor of the security staff who responded to the incident and is directly responsible for giving direction to" the prison staff who witnessed and investigated the incident. Am. Compl. ¶ 18. As Schneider neither witnessed nor investigated the incident in question, he was sufficiently impartial under the legal standards laid down in *Powell v. Ward.*[11] Accordingly, Espinal fails to demonstrate that Schneider was so insufficiently fair and impartial as to constitute a violation of due process.

### d. Evidence Supporting the Dispositions

To comport with due process, the decision to confine Espinal in the SHU must have been supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. 2768.

**11.** As to Espinal's claim that Schneider violated his due process rights by "assuming the role of a quasi-prosecutor" at the first Tier III hearing, Pl.'s Mem. at 13, he has introduced no evidence of improper or misleading questioning whatsoever.

Espinal claims that the decision rendered in the second Tier III hearing was not based on sufficient evidence. Pl.'s Mem. at 17–22. The evidence adduced at that hearing included testimony by officers who had conducted interviews with confidential informants. The law in this Circuit is that "the 'some evidence' standard may be met even where the *only* evidence was supplied by a confidential informant, 'as long as there has been some examination of indicia relevant to [the informant's] credibility.'" *Gaston v. Coughlin,* 249 F.3d 156, 163 (2d Cir.2001) (quoting *Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2d Cir.1996)) (emphasis supplied).

Espinal claims that he had a due process right to have the hearing officer "make an independent assessment of the reliability of [the] confidential informants, and to create and preserve a record of that assessment." Pl.'s Mem. at 19. The Second Circuit has recently noted that whether the Fourteenth Amendment does, in fact, grant this specific right is an open question. *Gaston,* 249 F.3d at 163. The Second Circuit has, however, clearly stated that "even if due process does require a hearing officer to conduct an independent assessment of the informant's credibility, that 'would not entail more than some examination of indicia relevant to credibility rather than wholesale reliance upon a third party's evaluation of that credibility,'" *Id.* (quoting *Russell v. Scully,* 15 F.3d 219, 223 (2d Cir.1993)). The record before us does not permit us to determine whether Pelc, the presiding officer at the second Tier III hearing, made the required examination of indicia relevant to the credibility of the confidential informants, whether by an independent assess-

ment or otherwise. Accordingly, we cannot say, at this point, whether Espinal's punishment was supported by constitutionally sufficient evidence.

### e. Statement of Fact Findings and Reasons for the Disposition

Espinal makes no claim that he was not provided with a written statement of fact findings and the reasons for the disposition in any of the Tier III hearings. He does, however, imply that such a statement exists for the second hearing at least by referring to "Pelc's Statement of Evidence" in his memorandum. Pl.'s Mem. at 21. Accordingly, we presume that a written statement was, in fact, provided to Espinal following each of the three Tier III hearings.

### 3. Improbability of Success

As the preceding discussion makes clear, it is very unlikely that Espinal will succeed on the merits of his due process claims. Accordingly, we deny his motion for a temporary restraining order or preliminary injunction on this basis.[12]

## C. Motion for Appointment of Counsel

■ In a letter dated December 2001, Espinal moves for assignment of counsel, pursuant to 28 U.S.C. § 1915(d).[13] "The factors to be considered in ruling on a motion for *pro bono* counsel are well settled and include 'the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel.'" *Rangi v. St. Barnabas Hosp.,* 2001

---

**12.** Hence, we need not and do not consider whether he will suffer irreparable harm in the absence of the requested relief.

**13.** He also purports to move for the appointment of counsel under 18 U.S.C. § 3006. That section, however, only applies in a criminal case.

WL 1590542, at *1 (S.D.N.Y. Dec. 12, 2001) (quoting *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989)). Of these factors, the most important is the merits of the case. The Second Circuit has made clear that "a threshold showing of some likelihood of merit" must be made before a court appoints counsel. *Cooper,* 877 F.2d at 174. Accordingly, we decline to appoint counsel to represent Espinal for the same reasons given above, namely, the absence of a "threshold showing of some likelihood of merit." [14] *Id.*

## CONCLUSION

Because Espinal has failed to make a substantial showing of likelihood of success on the merits of his due process claims, we deny his motion for a temporary restraining order or preliminary injunction. For substantially the same reasons, we deny his motion for the appointment of counsel to represent him in this action. Furthermore, in light of the above discussion, the defendants' time answer or move is adjourned until February 22, 2002.[15]

**IT IS SO ORDERED.**

---

14. We also note that Espinal has demonstrated an impressive ability to argue his case without the assistance of counsel. His memorandum in support of the instant motion, for example, is well-written and demonstrates a firm grasp of the issues that are at the heart of his case.

15. It would be helpful if any motion for summary judgment on the due process claims be accompanied by a copy of the written dispositions and transcripts of each of the three Tier III hearings. It would also be helpful if any motion for summary judgment on the Eighth Amendment claim be accompanied by a copy of the videotape of the events of September 16, 1998 alluded to in Espinal's submissions.