Jamel CLARK, also known as
Jahmel Clark, Plaintiff,

v.

Gerald GARDNER, Lt. of Corrections Officers; Shawangunk Correctional Facility, Joseph Smith, Superintendent; Shawangunk Correctional Facility, Lt. Palen, Lt. of Corrections Officers; Shawangunk Correctional Facility, Farra, Plant Superintendent of Facility Maintenance; Shawangunk Correctional Facility, Anthony Annucci, Commissioner of the New York State Dept. of Corrections, D. Venettozi, Director of Special Housing and Inmate Disciplinary Program, Dave Degraff, Corrections Officer; Shawangunk Correctional Facility, Mets, Corrections Officer; Shawangunk Correctional Facility, Caramonos, Corrections Officer; Shawangunk Correctional Facility, McElroy, Corrections Officer; Shawangunk Correctional Facility, Doctor Lee, Facility Health Care Director; Shawangunk Correctional Facility, Sergeant Harrison, Shawangunk Correctional Facility, and Pingotti, D.S.S., Defendants.

9:17–CV–0366

United States District Court,
N.D. New York.

Signed 06/22/2017

JAMEL CLARK, 99–A–0475, Plaintiff, pro se, Attica Correctional Facility, Box 149, Attica, NY 14011

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

## I. INTRODUCTION

This is an initial review of a civil rights complaint brought pro se by plaintiff Jamel Clark ("Clark" or "plaintiff"). Dkt. No. 1 ("Compl.").[1] Plaintiff, who is presently con-

1. Plaintiff identifies himself in the complaint as "Jahmel Clark" and states that his DIN is 99–A–0475. Compl. at 2. However, because the inmate with DIN 99–A–0475 is identified on the public website maintained by DOCCS as "Jamel Clark," plaintiff is identified on the

fined in the custody of the Department of Corrections and Community Supervision ("DOCCS") at Attica Correctional Facility, has not paid the filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 6 ("IFP Application"). Plaintiff also seeks appointment of pro bono counsel to represent him in this action. Dkt. No. 4.

## II. IFP APPLICATION

■ "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Clark's submissions demonstrate economic need. Plaintiff has also filed the inmate authorization required in the Northern District of New York. Dkt. No. 7. As a result, plaintiff's IFP application will be granted.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

In light of the fact that Clark was granted leave to commence this action in forma

docket and will be referred to in this action as "Jamel Clark." *See* http://nysdoccslookup.doccs.ny.gov.

2. Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or

pauperis, and because he seeks relief from officers and employees of a governmental entity, the sufficiency of the allegations set forth in his complaint must be considered in light of 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.

Section 1915(e)(2) directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (i) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (ii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

■ Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering

failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). Based upon a review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

*sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Summary of the Complaint

Clark asserts allegations of wrongdoing arising out of his confinement at Shawangunk Correctional Facility ("Shawangunk C.F.") in 2014. *See generally* Compl. The following facts are set forth as alleged by plaintiff in the complaint.

On approximately July 24, 2014, while Clark was temporarily confined at Attica C.F. for a court appearance, his cell at Shawangunk C.F. was searched. Compl. at 11. Various items of contraband were allegedly recovered during the search, along with several other unauthorized items. *Id.* Upon his return to Shawangunk C.F. on August 5, 2014, plaintiff was served with the inmate misbehavior report ("IMR") issued regarding the cell search. *Id.* at 12.

On August 6, 2014, a disciplinary hearing on this charge was conducted by Lt. Gardner. Compl. at 13. Clark's requests for an employee assistant and for production of relevant documents and reports were denied. *Id.* at 14. Plaintiff requested, among other things, a copy of DOCCS Directive 4934, setting forth the procedures to be followed when an inmate is not able to assume immediate responsibility for his property. *Id.* at 14–15. Plaintiff's request to call inmate Benjamin as a witness on his behalf was also denied. *Id.* at 15. Inmate Benjamin had told plaintiff that he observed officers placing a t.v. set and a lamp in plaintiff's cell prior to the July 24, 2014 cell search. *Id.* at 16.

At the conclusion of the hearing, Lt. Gardner found Clark guilty of four of the five rule violations with which he had been charged. Compl. at 16. Plaintiff was sanctioned with sixty days' confinement in the special housing unit ("SHU") and loss of privileges, loss of honor visiting privileges for four months, loss of television in his cell for one year, and six months loss of good time credits. *Id.* During his SHU confinement, plaintiff was harassed and threatened by C.O. Dave DeGraff and C.O. McElroy. *Id.* at 16–17.

The disciplinary determinations were affirmed on administrative appeal by Supt. Smith. Compl. at 17. After speaking with a member of the mental health staff regarding his hearing, Clark was informed by

Supt. Smith that the disciplinary determination was being reviewed by DOCCS's Central Office. *Id.*

On September 4, 2014, Clark was released from SHU. Compl. at 17. Upon leaving the SHU, C.O. McElroy stated: "You'll get what's coming to you when you get to the Block, since you like writing grievances about how we run our S.H.U. you piece of shit." *Id.* at 17–18.

Upon his return to his housing unit (the "close supervision unit"), Clark was violently assaulted by a group of currently unknown individuals. Compl. at 18. Plaintiff sustained serious injuries, including a concussion, the loss of three front teeth, and a separated shoulder. *Id.* At the time of this assault, C.O. Mets was the supervising officer on the unit. *Id.* Plaintiff was transported to an outside hospital for medical evaluation and treatment of his injuries. *Id.* at 19. Upon his return to Shawangunk C.F., plaintiff was confined in the facility hospital. *Id.* at 19–20. The property in plaintiff's cell was not properly inventoried and secured during this period. *Id.*

On September 7, 2014, C.O. Algarin (not a defendant) allegedly found a marijuana cigarette in Clark's cell while looking for plaintiff's razor. Compl. at 20. C.O. Algarin issued an IMR charging plaintiff with possession of drugs. *Id.* Shortly after receiving the IMR and being informed that a Tier III disciplinary hearing would be held upon his release from the facility hospital, plaintiff attempted suicide. *Id.* Upon his release from the hospital, plaintiff was sent to Downstate Correctional Facility and admitted to the "Office of Mental Health Suicide Prevention Crisis Observation and Treatment Unit." *Id.* at 21.

On September 11, 2014, Clark was returned to Shawangunk C.F. and confined in the SHU. Compl. at 21. C.O. Caramonos did not properly inspect and inventory the cell to which plaintiff was assigned. *Id.*

On September 15, 2014, Clark's disciplinary hearing on the September 7, 2014 IMR began with Lt. Gardner serving as the hearing officer. Compl. at 21–22. Lt. Gardner denied plaintiff's request for an employee assistant and deprived him of his right to call witnesses and present a defense. *Id.* at 22–23. Plaintiff was found guilty and sanctioned with ninety days' SHU confinement and loss of privileges, and six months loss of good time credit. *Id.* at 23. The disciplinary determination was affirmed on administrative appeal by Supt. Smith and by DOCCS Acting Commissioner Annucci. *Id.*

On September 24, 2014, Clark's SHU cell was searched by C.O. DeGraff, and Sgt. Harrison was present during the search. Compl. at 24. No contraband was discovered during the search. *Id.* at 24–25. However, C.O. DeGraff threatened plaintiff and told him that he would "make sure you come up dirty for 'K–2'," a reference to synthetic marijuana. *Id.* at 25. Later that day, plaintiff was ordered to undergo a urinalysis. *Id.* On the basis of that test, plaintiff was issued an IMR charging him with being under the "influence of Intoxicant/Alcohol 'K–2'." *Id.*

In preparation for this hearing, Clark requested numerous documents and reports regarding the testing apparatus and protocols, but these requests were denied. Compl. at 26. Plaintiff also requested audio and video of the threats made by C.O. DeGraff, a request which was also denied by hearing officer Deputy Supt. Pingotti. *Id.* at 27. Plaintiff was removed from the hearing prior to its conclusion and never received a written statement of the disposition. *Id.* Plaintiff learned in October 2014 that he had been found guilty and sanctioned with sixty days' SHU confinement and loss of privileges. *Id.* at 28. The disciplinary determination was affirmed on ad-

ministrative appeal by Supt. Smith and by DOCCS Acting Commissioner Annucci. *Id.*

In the following months, Clark was subjected to verbal and physical abuse by C.O. DeGraff, C.O. McElroy, C.O. Caramonos, and Sgt. Harrison. Compl. at 28. The physical abuse included acts of inappropriate sexual contact. *Id.* at 28–29.

On October 17, 2014, Clark's cell was searched by C.O. DeGraff. Compl. at 30. C.O. DeGraff confiscated plaintiff's mattress and reported that several items of contraband were found inside the mattress. *Id.*[3] C.O. DeGraff issued an IMR to plaintiff regarding the items recovered in the search and the damaged mattress. *Id.*

A disciplinary hearing on this charge was then conducted by Lt. Palen. Compl. at 31. Lt. Palen denied plaintiff's request for an assistant and also denied his requests for relevant videos and witnesses. *Id.* In addition, C.O. DeGraff testified that he had destroyed the mattress prior to the hearing so its condition could not be examined by the hearing officer. *Id.* at 32. At the conclusion of the hearing, Lt. Palen found plaintiff guilty and sanctioned him with thirty days' confinement and loss of privileges. *Id.* at 33. Plaintiff was also charged with the cost of the mattress. *Id.* The disciplinary determination was affirmed on administrative appeal by Deputy Supt. Pingotti. *Id.*

On October 24, 2014, while exiting his cell en route to the shower, Clark was assaulted by C.O. DeGraff and C.O. Caramonos. Compl. at 34. The assault was in retaliation for plaintiff having filed grievances and complaints against these offi-

cers. *Id.* During the incident, plaintiff's penis was "aggressively squeezed, causing him pain." *Id.* An IMR was issued to plaintiff regarding this incident. *Id.*[4]

The disciplinary hearing on this charge was conducted by Plant Supt. Farra. Compl. at 35. Clark's request for an employee assistant was denied; plaintiff was also denied relevant documents and video of the incident. *Id.* Plaintiff was improperly removed from the hearing and was not provided with a written statement of the disposition made by the hearing officer. *Id.* Plant Supt. Farra found plaintiff guilty and imposed a sanction of four months' SHU confinement and loss of privileges. *Id.* at 37.[5] The disciplinary determination was affirmed on administrative appeal by Supt. Smith and DOCCS SHU Director Venettozi. *Id.*

In November 2014, Clark received an IMR which charged him with having made threats against Shawangunk C.F. staff. Compl. at 37. Lt. Gardner served as the hearing officer. *Id.* at 38. Plaintiff's request for an employee assistant was denied, as were his requests for relevant documents and witnesses. *Id.* at 38–39. Plaintiff was found guilty on December 10, 2014, and sanctioned with thirty days of confinement and loss of privileges. *Id.* at 39. The disciplinary determination was affirmed by Supt. Smith. *Id.*

Clark commenced a state court proceeding pursuant to New York CPLR Article 78 to challenge four of his disciplinary hearings. Compl. at 24. In April 2016, the Article 78 proceeding was dismissed as

---

3. Plaintiff had previously filed a grievance complaining about the condition of his mattress and also about the fact that the cell equipment report had not been completed when plaintiff was first assigned to the cell. Compl. at 30.

4. Plaintiff was sent to Sullivan Correctional Facility for a mental health evaluation on or about October 31, 2014. Compl. at 35.

5. During his SHU confinement, plaintiff was in a cell that was extremely cold. Compl. at 41.

moot, upon the advice of the Attorney General that all of the challenged disciplinary determinations had been administratively reversed and expunged from plaintiff's record. *Id.; see Clark v. State Dep't of Corrections and Community Supervision*, 138 A.D.3d 1331, 28 N.Y.S.3d 639 (N.Y. App. Div. 3d Dep't 2016).

During the period September through December 2014, Dr. Lee "neglected to treat [Clark] in a time sensitive manner," and was "indifferent to his painful left shoulder separation." Compl. at 40. In addition, unnamed corrections staff "neglected to escort plaintiff" to his medical appointments and also to "physical therapy call out." *Id.* Dr. Lee did not "ensure that plaintiff received physical therapy" for his shoulder injury. *Id.* As a result, plaintiff faced a substantial risk of permanent disability. *Id.*

Based upon the foregoing, Clark asserts claims for the violation of his rights protected under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution. *See* Compl. at 41–43. Plaintiff also claims that defendants violated his due process rights protected under the Fifth Amendment to the U.S. Constitution, but because plaintiff is imprisoned in a state institution, the Fourteenth Amendment, and not the Fifth Amendment, applies to his due process violation claims. *See Pugliese v. Nelson*, 617 F.2d 916, 918 n.2 (2d Cir. 1980). Plaintiff seeks an award of compensatory and punitive damages against the defendants as well as declaratory relief. *Id.* at 44–46. For a complete statement of plaintiff's claims and the facts he relies in support of those claims, reference is made to the complaint.

## C. Analysis

■ Clark seeks relief for violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983"), which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

■ The personal involvement of a defendant is a prerequisite for the assessment of liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior is inapplicable to these claims. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). Thus, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

### 1. Official Capacity Claims

■ The Eleventh Amendment protects states against suits brought in federal court. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The immunity granted to the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, *Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006), and, unless waived, bars all money damage claims against state officials acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Davis v. New York*, 316

F.3d 93, 101 (2d Cir. 2002) (observing that an inmate-plaintiff's claims for damages against individual corrections department employees sued in their official capacities are considered claims against New York and, therefore, are barred by the state's Eleventh Amendment immunity).

■ As a result, Clark's claims for money damages against defendants Supt. Smith, DOCCS Acting Commissioner Annucci, SHU Dir. Venettozi, Dr. Lee, and Deputy Supt. Pingotti in their official capacities, *see* Compl. at 8–10, are dismissed with prejudice on Eleventh Amendment grounds. *See* 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).

## 2. First Amendment Claims

■ To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff— namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

■ Because virtually any adverse action taken against a prisoner by a prison official can be characterized as a constitutionally proscribed retaliatory act, courts must "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Analysis of retaliation claims thus requires thoughtful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the factual allegations tending to link the two. "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

■ Clark claims that C.O. DeGraff and C.O. Caramonos assaulted him on October 23, 2014 in retaliation for plaintiff having filed inmate grievances regarding their mistreatment of him. Compl. at 34. Plaintiff also claims that C.O. DeGraff destroyed his mattress (and thereby prevented plaintiff from presenting a meaningful defense to the IMR issued by C.O. DeGraff in October 2014) in retaliation for plaintiff's grievance activity. *Id.* at 42.

■ Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), Clark's First Amendment retaliation claims against C.O. DeGraff and C.O. Caramonos survive sua sponte review and require a response. In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed dispositive motion.

## 3. Eighth Amendment Claims

■ The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811

(1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

### a. Excessive Force

■ The Eighth Amendment prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

■ The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7, 112 S.Ct. 995 (citing *Whitley v. Albers*, 475 U.S. 312, 321–22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained.").

■ Clark claims that C.O. DeGraff and C.O. Caramonos assaulted him on October 23, 2014, as he was exiting his cell to take a shower. Compl. at 34. Plaintiff also alleges that he was assaulted by C.O. De-Graff, C.O. McElroy, and Sgt. Harrison while he was being escorted by these officers to the facility hospital. *Id.* at 29. In addition to these excessive force incidents, plaintiff alleges that on numerous other occasions he was verbally harassed and threatened with physical harm by these defendants. *Id.* at 28–29. As against Deputy Supt. Pingotti and Supt. Smith, plaintiff alleges that these defendants failed to properly supervise these officers. *Id.* at 42–43.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, Clark's Eighth Amendment excessive force claims against C.O. DeGraff, C.O. Caramonos, C.O. McElroy, and Sgt. Harrison survive sua sponte review and require a response. In so ruling, no opinion is expressed as to whether these claims can withstand a properly filed dispositive motion.

■ However, Clark's Eighth Amendment excessive force claims against Deputy Supt. Pingotti and Supt. Smith do not survive initial review. Because "vicarious liability is inapplicable to ... § 1983 suits," *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).

The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon*

for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*").

In this case Clark has failed to adequately allege personal liability even under the *Colon* standards. Plaintiff does not allege that either Deputy Supt. Pingotti or Supt. Smith was personally involved in the alleged misconduct which gave rise to the claims surviving sua sponte review. Rather, plaintiff alleges only that these supervisory officials failed to prevent the use of force against inmates and failed to discipline staff who engaged in misconduct. Compl. at 42–43. These allegations are wholly conclusory in nature and do not give rise to a cognizable claims for the violation of plaintiff's constitutional rights.

As a result, Clark's Eighth Amendment excessive force claims against Deputy Supt. Pingotti and Supt. Smith are dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### b. Failure to Protect

The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985).

To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: (i) possessed actual knowledge of the use by another of excessive force; (ii) had a realistic opportunity to intervene and prevent the harm from occurring; and (iii) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk." *Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970); *see also Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) (holding that a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety).

Clark alleges that on or about September 4, 2014, he was assaulted by a "combined group of individuals whose identities are still unknown and unclear to plaintiff." Compl. at 18. Although it is unclear from the complaint, plaintiff is understood to be alleging that this assault was carried out by other inmates. *See Id.* Plaintiff further alleges that defendant C.O. Mets was the supervising officer of the unit at the time of the assault. *Id.* Liberally construed, plaintiff claims that C.O. Mets failed to protect him from this attack in violation of his Eighth Amendment rights. *Id.* at 18, 42.

Upon review, and with due regard for Clark's status as a pro se litigant, plaintiff has not alleged facts sufficient to plausibly suggest that C.O. Mets knew of a particular risk to plaintiff's safety or that C.O. Mets was deliberately indifferent for fail-

ing to protect plaintiff. Plaintiff does not allege that he was threatened or involved in prior altercations in the housing unit. Rather, plaintiff describes the attack as a surprise and states that he cannot identify his assailants. While C.O. Mets is identified as the supervising officer on the unit, plaintiff does not clearly allege that C.O. Mets witnessed the assault.

In sum, the facts alleged are not sufficient to plausibly suggest that C.O. Mets knew of any risk or danger Clark may have faced, let alone that he acted with deliberate indifference thereto. *See Paris v. New York State Dep't of Corrs. Servs.*, 947 F.Supp.2d 354, 363 (S.D.N.Y. 2013) (concluding plaintiff cannot assert a claim against the defendant for failure-to-protect from a surprise attack). As a result, plaintiff's Eighth Amendment failure to protect claim against C.O. Mets is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### c. Conditions of Confinement

▮▮▮ The Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970. To demonstrate that the conditions of his confinement constitute cruel and unusual punishment a plaintiff must show that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *Id.* at 834, 114 S.Ct. 1970; *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The Second Circuit has held that proof that the inmate was subjected "for a prolonged period to bitter cold" is sufficient to raise a triable issue of fact as to the objective prong of an Eighth Amendment conditions of confinement claim. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (holding that summary judgment for defendants was precluded where prisoner was subjected to temperatures near or well below freezing in his cell for a five-month period); *see also Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967) (vacating a dismissal on the pleadings where the complaint alleged that prisoner was deliberately exposed to bitter cold for periods of twenty-one days or more while in solitary confinement); *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (summary judgment for the defendants was appropriate because plaintiff failed to allege that his cell was open to the elements, lacked adequate heat, or that he had been subjected to "bitter cold").

▮▮▮ Clark alleges that he was confined in a SHU cell which lacked proper weatherproofing and was "cold." Compl. at 41. Plaintiff states that he had to be "fully dressed 24 hours a day." *Id.* Plaintiff asserts this claim against defendants Supt. Smith, Deputy Supt. Pingotti, and Plant Supt. Farra. *Id.* at 43.

Upon review, and even assuming that Clark has alleged facts sufficient to plausibly suggest that the conditions of his SHU confinement posed a substantial risk of serious harm to his health and safety, the complaint does not allege any facts which even suggest that any of these defendants were aware of the temperature in his SHU cell, let alone that any of them acted with deliberate indifference to or refused to take steps to address this situation. Accordingly, plaintiff's Eighth Amendment conditions of confinement claim against these defendants does not survive initial

review and this claim is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### d. Medical Care

■ There are two elements to a claim that officials violated a plaintiff's right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).

■ "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). "An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

■ In his complaint, Clark claims that Dr. Lee "neglected to treat plaintiff's injuries to his shoulder and back in a time sensitive manner." Compl. at 40. In support of this claim, plaintiff alleges only that "security staff responsible for taking plaintiff to medical treatment and also physical therapy call out neglected to escort plaintiff to these appointments." *Id.* Plaintiff does not allege that Dr. Lee refused plaintiff's requests for medical evaluation and treatment, nor does he contend that Dr. Lee was aware that plaintiff was missing his appointments due to staff misconduct.

Upon review, the facts alleged in the complaint do not plausibly suggest that Dr. Lee acted with deliberate indifference, was reckless in his treatment of Clark, or provided him with medical treatment that was "inadequate" in a constitutional sense. As a result, this claim does not survive sua sponte review and is dismissed without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### 4. Fourteenth Amendment Claims

■ To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351–52 (2d Cir. 1996).

■ "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). For example, segregation for a period of thirty days was found by the Supreme Court in Sandin not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485–86, 115 S.Ct. 2293. In explaining its reasoning, the Court found that the disciplinary confinement failed to

present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id.*

Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

▬▬ "Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 Fed. Appx. 120, 122 (2d Cir. 2008) (summary order). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271 (LEK/GHL), 2007 WL 4555932, at *8 & n. 40 (N.D.N.Y. Dec. 19, 2007).

▬▬ The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.*

▬▬ Under *Wolff* and its progeny, a prisoner is also entitled to an "employee assistant" to aid in the preparation for a disciplinary hearing when the inmate is illiterate, confined to restrictive confinement, or unable to grasp the complexity of the issues involved. *See Rodriguez v. Selsky*, No. 07-CV-0432 (LEK/DEP), 2011 WL 1086001, at *8 (N.D.N.Y. Jan. 25, 2011).

▬▬ Clark claims that he was denied due process at disciplinary hearings conducted at Shawangunk C.F. during the period August to November 2014: the hearings conducted by Lt. Gardner, Deputy Supt. Pingotti, Lt. Palen, and Plant Supt. Farra. Compl. at 41–42. Plaintiff alleges, among other things, that his requests for an employee assistant were improperly refused, he was denied the opportunity to call witnesses and present documentary and video evidence, and the hearing officers were biased. *Id.* Plaintiff was found guilty of misbehavior at all of the hearings and was sanctioned, in the aggregate, to more than three hundred days SHU confinement. The disciplinary determinations were affirmed on administrative appeal.[6]

Upon review, and with due regard for Clark's status as a pro se litigant, a response is required from defendants Lt. Gardner, Deputy Supt. Pingotti, Lt. Palen, Plant Supt. Farra, Supt. Smith, SHU Director Venettozi, and DOCCS Acting Commissioner Annucci as to plaintiff's claims that he was denied due process in violation

---

6. Four of the disciplinary determinations were reversed and expunged from plaintiff's record during the pendency of his state court

Article 78 proceeding. As of the date this relief was granted, plaintiff had served his SHU confinement. Compl. at 28.

of his Fourteenth Amendment rights at these disciplinary hearings. This is not a ruling on the merits and no opinion is expressed as to whether these claims can withstand a properly filed dispositive motion.

## IV. APPOINTMENT OF COUNSEL

 Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir. 1997). Instead, the Court must carefully consider a number of factors in ruling upon such a motion. As the Second Circuit stated in *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986), "the district judge should first determine whether the indigent's position seems likely to be of substance." If the claim satisfies that threshold requirement, the court must then consider

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.* at 61–62. None of these factors are controlling in any particular case. Rather, the court must decide each case on its own facts. *Id.* at 61.

 At this early stage of the litigation, it is difficult to assess the likely merits of Clark's surviving claims. Moreover, there is nothing in the record which demonstrates that plaintiff is not able to effectively pursue this action. While it is possible that there will be conflicting evidence

implicating the need for cross-examination if this case proceeds to trial, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61). Further, if this case survives a dispositive motion filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. Finally, this Court is not aware of any special reason why appointment of counsel **at this time** would be more likely to lead to a just determination of this litigation. alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61). Further, if this case survives a dispositive motion filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. Finally, this Court is not aware of any special reason why appointment of counsel **at this time** would be more likely to lead to a just determination of this litigation.

Therefore, Clark's motion for appointment of counsel (Dkt. No. 4) is denied without prejudice.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's IFP Application (Dkt. No. 6) is **GRANTED;**[7]

2. The Clerk of the Court shall provide the superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 7), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern

---

7. Although his in forma pauperis application has been granted, plaintiff will still be re-

quired to pay fees that he may incur in this action, including copying and/or witness fees.

District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915;

3. The Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's Office;

4. The following claims survive review and require a response: (i) First Amendment retaliation claims against C.O. De-Graff and C.O. Caramonos; (ii) Eighth Amendment excessive force claims against C.O. DeGraff, C.O. Caramonos, C.O. McElroy, and Sgt. Harrison; and (iii) Fourteenth Amendment due process claims against Lt. Gardner, Deputy Supt. Pingotti, Lt. Palen, Plant Supt. Farra, Supt. Smith, SHU Director Venettozi, and DOCCS Acting Commissioner Annucci;

5. Plaintiff's claims for money damages against defendants Smith, Annucci, Venettozi, Lee, and Pingotti in their official capacities are **DISMISSED with prejudice** for failure to state a claim in accordance with 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2);

6. Plaintiff's remaining claims are **DISMISSED without prejudice** for failure to state a claim in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1);[8]

7. The Clerk shall terminate C.O. Mets and Dr. Lee as defendants in this action;

8. The Clerk shall issue summonses and forward them to the U.S. Marshal for service of process upon defendants Lt. Gardner, Supt. Smith, Lt. Palen, Plant Supt. Farra, DOCCS Acting Commissioner Annucci, SHU Dir. Venettozi, C.O. DeGraff, C.O. Caramonos, C.O. McElroy, Sgt. Harrison, and Deputy Supt. Pingotti;

9. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

10. A response to the complaint shall be filed by defendants or their counsel as provided for in the Federal Rules of Civil Procedure;

11. Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice** as set forth above;

12. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367;

13. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action;

14. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

15. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and

---

8. Should plaintiff seek to pursue one or more of the claims dismissed without prejudice by the Court herein, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

16. The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.